UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSE

| | |
|---|---|
| TALIA PENA,<br><br>        **Plaintiff,**<br><br>   v.<br><br>WALMART STORES, INC., JOSHUA STRUDL, "JANE DOE CUSTOMER," "JOHN DOE," "JANE DOE," AND "XYZ CORP.," (FICTITIOUS NAMES),<br><br>        **Defendants.** | Civ. No. 2:19-cv-17896 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Presently pending in this personal injury action is a motion by Defendant Walmart, Inc. ("Walmart" or "Defendant") for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 37. For the reasons set forth below, Defendant's motion for summary judgment is **granted.**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    Plaintiff Talia Pena ("Plaintiff") alleges that on January 13, 2018, she was struck by an unidentified customer operating a motorized shopping cart while she was shopping at Walmart located in Secaucus, NJ. Def.'s Stmt. Of Undisputed Material Facts ("DSUMF"), ¶¶ 4-5, ECF No. 37-1. Plaintiff claims that as she was bent over smelling body sprays on a bottom shell "right before the self checkout lanes," an unidentified female customer drove a motorized cart into her because the woman had paper products stacked so high in the cart that she could not see in front of her. Pl.'s Stmt. Of Material Undisputed Facts (PSUMF), ¶ 3; Pl. Dep. Tr. at 20:17-21, 25:24-26:4, 48:7-9, PSUMF Ex. A, ECF No. 39.

    This negligence action was initially filed in state court and on September 11, 2019, removed to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1. Moving for summary judgment, Defendant argues that the mode of operation rule does not apply and therefore, Plaintiff must, but cannot, demonstrate actual or constructive notice of the dangerous condition at issue in this litigation. The Court agrees.

**II.    STANDARD AND BURDEN OF PROOF**

    Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the

1

movant is entitled to judgment as a matter of law." "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). The Court's role at the summary judgment stage "is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

The party moving for summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). "[U]nsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d. Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. Mode of Operation Rule

Generally, under New Jersey law, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Id.* To hold a business owner liable, a plaintiff ordinarily must demonstrate that "the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.*

However, a plaintiff need not prove actual or constructive notice under the "mode of operation" rule, which applies "when a substantial risk of injury is inherent in a business operator's method of doing business." *Id.* at 564. To invoke that rule, the plaintiff must show there was a "reasonable probability" that the dangerous condition would occur "as

2

the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." *Id.* at 563; *Bozza v. Vornado, Inc.*, 42 N.J. 355, 360 (1964); *see also Layden v. Target Corp.*, 768 Fed. Appx. 152, 157 (3d Cir. 2019). In that instance, a plaintiff is afforded an "inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." *Nisivoccia,* 175 N.J. at 563-64.

In "recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model," the mode of operation rule has only been applied to self-service or similar settings where "customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk." *Prioleau v. Kentucky Fried Chicken, Inc.*, 223 N.J. 245, 262 (2015). While "the rule applies only to accidents occurring in areas affected by the business's self-service operations," that area "may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities." *Id.* Finally, the mode of operation rule is not limited to situations in which a customer's negligence creates a dangerous condition; it is also applicable to "self-service settings in which the injury may have resulted from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself." *Id.* at 263.

Generally, merely providing shopping carts as a self-service equipment does not alone increase the risk of a dangerous condition to warrant application of the mode of operation rule. *See Znoski v. Shop–Rite Supermarkets, Inc.*, 122 N.J. Super. 243, 247–48 (App. Div.1973) (concluding that mode of operation rule did not apply where unknown perpetrator struck plaintiff with shopping cart on store property because there was no "substantial risk of injury [] implicit, or inherent, in the furnishing of shopping carts to patrons by a store proprietor. Shopping carts are not dangerous instrumentalities, and they are uniquely suitable for the purpose for which furnished."); *see also e.g., Yakup v. Vill. Supermarkets Inc.,* No. A-3327-18T2, 2020 WL 1987049, at *3 (N.J. Super. Ct. App. Div. Apr. 27, 2020) (holding mode of operation rule inapplicable because "mere provision of shopping carts for use by customers via a self-service cart corral does not raise a substantial risk inherent in defendant's mode of doing business"); *Brooks v. Wal-Mart Stores, Inc.*, 854 Fed. App'x 422 (2021) (finding lack of inherently dangerous condition negated court's need to apply mode of operation doctrine where patron struck foot on protruding bench while attempting to maneuver around two unattended shopping carts partially blocking path).

Rather, application of the mode of operation rule requires that some aspect of the store's self-service operation created a substantial risk of injury. *See e.g., Meade v. Kings Supermarket-Orange*, 71 N.J. 539 (1976) (finding reliance on *Znoski* misplaced because plaintiffs were injured by "youngster" riding shopping cart down a ramp with defective design, construction, and obstruction of vision created by wall); *Klarman v. Pathmark*

3

*Supermarket*, No. A-2169-14T1, 2018 WL 6729704 (N.J. App. Div. Dec. 24, 2018) (applying mode of operation rule where shopping carts remained outside and store had no policy for removal of accumulated snow before allowing customers to bring snow laden carts inside); *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 429 (1966) (allowing inference of negligence where in usual course of business, greens sold from open bins on self-service basis created "likelihood that some will fall or be dropped to the floor"); *compare Jeter v. Sam's Club*, 250 N.J. 240, 244, 271 A.3d 317, 319–20 (2022) (holding mode of operation rule inapplicable because sale of grapes in closed clamshell containers did not create reasonably foreseeable risk that grapes would fall to ground during ordinary customer handling). Here, Plaintiff has not identified *any* evidence to support her position that providing *motorized* shopping carts, in contrast to non-motorized carts, is an aspect of the store's self-service operation that creates a substantial risk of injury.

To the extent Plaintiff suggests that the mode of operation rule applies because the risk of injury resulting from an overstuffed cart is foreseeable,[1] the furnishing of self-service shopping carts, whether motorized or not, does not create a substantial risk of injury that required special precautions to be taken by Walmart. "Every human activity involves some risk of harm, but the reasonable probability of having other than a minor accident from the use of carts in [the store's] operation does not give rise to a duty to take measures against it." *Znoski*, 122 N.J. Super. at 248. While it may have been possible for customers to stack their carts so high that they cannot see where they are going, Plaintiff proffers no evidence that supplying motorized carts on a self-serve basis invited customers to do so. *See Layden*, 768 Fed. App'x. at 158 (concluding mode of operation did not apply because hooks that plaintiff slipped on could be ripped off by customers, but no aspect of hooks or packaging "invited" removal such that there was inherent substantial risk of injury in store's use of them); *Teixeria v. Walmart Stores, Inc.*, No. 18-13103, 2021 WL 4272828, at *3 (D.N.J. Sept. 16, 2021) (declining to apply mode of operation rule absent evidence that store's display of merchandise on shelves "invited" customers to open bottles or created particular risk of container being cracked).

Finally, Plaintiff argues that the mode of operation applies because the "checkout" area where her injury occurred was a self-service setting nearly identical to the self-service location of the plaintiff's slip and fall in *Nisivoccia*. However, the mode of operation rule requires a "nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Prioleau*, 223 N.J. at 262. Thus, in *Nisivoccia,* the mode of operation rule was applicable, not merely due to where the injury occurred, but because the injury occurred in a location of the store where customers selected and bagged loose grapes that "are reasonably likely to fall to the ground during customer or employee handling" creating a dangerous condition. *Nisivoccia*, 175 N.J. at 565. The court recognized that the "dangerous condition caused by stray grapes in the entry

---

[1] *See* discussion below of Mr. Strudl's deposition testimony regarding hypothetical scenario and "duty" to offer help to patrons.

4

area of the checkout lanes was a foreseeable risk posed by the store's mode of operation." *Id.* at 566. In this case, Plaintiff has not shown *any* nexus between the self-service component of providing motorized shopping carts and the risk of injury near the checkout area.

Thus, application of the mode of operation rule is not warranted here and accordingly, Plaintiff must prove actual or constructive notice to establish liability.

B. Actual or Constructive Notice

Under the business invitee rule, Plaintiff must prove "defendant had actual or constructive knowledge *"of the dangerous condition that caused the accident." Nisivoccia*, 175 N.J. at 563 (emphasis added). To show that Defendant had actual notice, Plaintiff relies on the deposition testimony of Walmart store manager Joshua Strudl.[2] Mr. Strudl agreed that in the "hypothetical" scenario where a customer's view is obstructed by an over-stacked motorized cart, it is possible that another customer may be hit, *see* Strudl Dep. Tr. at 85:9-16, PSUMF at Ex. B, and that if he or another Walmart employee observed such a scenario, the employee would have a "duty" to approach that customer and offer to take items to the service desk to hold until the customer was ready to make the purchases. Strudl Dep. Tr. at 93:4-94:7, 95:21-96:3. Plaintiff also points to testimony by Mr. Strudl that he was aware of approximately 15 prior collisions involving motorized carts striking other objects. *Id.* at 75:1-14. Even if as Plaintiff proposes, such testimony reflected that Walmart had a general concern about motorized carts, it does not demonstrate that Walmart had any *actual* notice of the over-stacked cart operated by the unidentified customer that caused Plaintiff's injuries. *See e.g., Layden,* 768 Fed. Appx. at 156 (noting there was no evidence of *actual* notice that plastic hook that plaintiff slipped on was on floor).

Since Plaintiff has not presented any evidence of actual notice, she must demonstrate that there is basis for a jury to find that Defendant had *constructive* notice of the dangerous condition that caused the accident. "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" *Arroyo v. Durling Realty, LLC,* 433 N.J. Super. 238, 243 (App. Div. 2013) (citing *Sims v. City of Newark,* 244 N.J. Super. 32, 42 (Law Div.1990)). To meet her burden, Plaintiff must show that the condition "existed for a sufficient length so that a reasonably diligent person would have known of the condition." *Klarman,* 2018 WL 6729704, at *3; *Garcia v. Walmart, Inc.,* No. 17-03118, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021) ("The key fact in determining constructive notice is the length of time that the hazard was present."). While "[c]onstructive notice is usually a question of fact for the jury" summary judgment may be appropriate if "no reasonable juror could conclude otherwise." *Garcia,* 2021 WL 754006, at *5.

---

[2] By Stipulation dated August 28, 2019, Mr. Strudl was voluntarily dismissed from the action, as was Walmart, which the Court can only assume was a typographical error. *See* Not. Of Removal, Ex. B, ECF No. 1-2.

5

Here, Plaintiff has not identified *any* evidence of how long the unidentified customer had an over-stacked cart before Plaintiff was injured. *See e.g., Arroyo*, 433 N.J. Super. 238, 242-43 (concluding that plaintiff failed to present evidence that phone card discarded on sidewalk was present for an unreasonable amount of time and that absence of actual or constructive notice of discarded phone card on sidewalk was fatal to plaintiff's claims of liability); *compare Garcia*, 2021 WL 754006 (finding that presence of hazard for 20 minutes was present was sufficient to raise genuine issue of material fact regarding constructive notice of spill). Construing the record in a light most favorable to Plaintiff, there is no basis for a jury to find that Defendant had constructive notice of the alleged hazard that caused Plaintiff's injuries.

### IV.     CONCLUSION

For the reasons noted above, Defendant's motion for summary judgment is **granted**.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: November 29, 2022